The lower court has favored us with a written opinion in this case in which it has clearly set forth the issues and correctly analyzed the testimony. It is as follows:
"This is a compensation case, the plaintiff claiming compensation for disability due to an accident in which he was injured on June 23, 1941. There is no dispute as to the accident or as to the injury, the only question presented to the Court being the extent of the injury and the present condition of the plaintiff.
"The testimony shows that following the accident in which plaintiff was injured, he was brought to Monroe and taken to Dr. Russell, a local masseur, by the defendant; that when he did not seem to improve he was taken to Dr. H.E. Guerriero for treatment by the defendant. Dr. Guerriero testified that he had him x-rayed and found he had a back injury; that a fragment of bone about the size of a pea seemed to have broken off in the region of the fourth lumbar. Dr. Guerriero testified that he treated this party, put him in a cast on August 14, 1941 while he had him at the St. Francis Sanitarium, and then let him go home after he had placed him in a cast; that when the cast was removed on October 2, 1941, he kept him under treatment until October 6th when he let him go home. On October 11, 1941 the plaintiff was examined for the defendant by Dr. H.A. Durham, of Shreveport. This examination was made in the presence of Dr. Guerriero and referred to in his testimony as being the same examination which Dr. Durham refers to in his letter dated October 13, 1941, which by agreement has been filed in the record as the testimony of Dr. Durham. Dr. Durham refers to the x-ray showing the fragment of bone the size of a pea, apparently in the ligaments in the upper anterior margin of the fourth lumbar vertebra. The plaintiff continued to complain of his injury and to see Dr. Guerriero at intervals. The last time that Dr. Guerriero saw him, according to Dr. Guerriero's testimony, was on February 20, 1942 at which time the plaintiff was still complaining. On May 15, 1942, Dr. Guerriero discharged him as being well enough to return to work.
"In regard to the fragment of bone which Dr. Guerriero and Dr. Durham referred to as being found upon x-ray examination in the back of the plaintiff, Dr. Guerriero status that injuries of this kind should be cured in four to five months from the date the cast was put on and that he felt sure the piece of bone would be absorbed. The defendants have introduced no x-rays made of the plaintiff after the x-rays which were used by Dr. Guerriero and Dr. Durham in the examinations prior to October 13, 1941, so that their testimony in this case is based on examination of x-rays made prior to October 14, 1941, and their testimony is an opinion of what will develop in future as to plaintiff's condition and not as to what they found from an examination of the x-rays which had been made of the plaintiff and introduced in evidence, and which were made in various intervals subsequent to October, 1941, covering a period of time to and including the 8th of October, 1942. Three doctors have testified as to the condition of plaintiff at the time of trial (or shortly before that time) that the plaintiff is still totally disabled.
"Dr Bendel, one of the doctors who testified for plaintiff, made a number of x-rays of the plaintiff's back, in fact, he took and introduced in the record fourteen *Page 392 
x-rays of plaintiff's back at various periods between November 14, 1941 and October 8th, 1942. Some of these pictures were taken on November 14, 1941, April 6, 1942, July 16, 1942 and October 8, 1942.
"Dr. Bendel testified about the same fragment of bone about the size of a pea in the neighborhood of the upper anterior margin of the fourth lumbar vertebra; and following the developments as shown by the x-rays of what happened to this fragment of bone during the periods covered by the x-rays, he testified, and the x-rays clearly show, even to a layman, that his testimony is correct; that instead of being absorbed, as Dr. Guerriero testified, he thought this piece of bone would be, this piece of bone has continued to grow and enlarge and to take the shape of a horn or spur growing adjacent to the vertebra. While Dr. Guerriero's (defendant's witness) testimony is to the effect of what he thought would happen in the future, that is, within the next six or twelve months after the cast had been applied in August of 1941, Dr. Bendel's testimony covers the period which elapsed from November, 1941 to October, 1942, and shows that instead of improving, the condition of plaintiff's back, as disclosed by the x-rays as well as by physical examination, has become progressively worse.
"An examination of the medical expert testimony will show that there is really not any serious contradiction of the medical testimony offered by the plaintiff, as the testimony offered by defendant was confined in the main to the condition of plaintiff at a time approximately a year or more before the trial, while the testimony of the plaintiff shows his condition during the past year or more, up to the date of trial.
"The Court cannot help but be impressed with the apparent fact that what seems to have influenced the contention of the defendant that this plaintiff is not injured is a report made by a private detective, one W.P. Holt, who was called as a witness by defendant and introduced a moving-picture which he secretly made of plaintiff engaged in examining or working on his automobile. In other words, this detective, from Dallas, Texas, apparently convinced the defendant that plaintiff was no longer incapacitated but was a malingerer. The Court had the picture in question displayed for its viewing, not once but twice, so as not to overlook any details obtained therein.
"The testimony of all the witnesses in the case, including plaintiff, is to the effect that he wears a brace, and while he has on this brace he can drive a car, walk around, most of the time with the aid of a stick, but he cannot perform any work, especially heavy work or manual labor. The record shows that at the time he was injured, he was working as a roughneck on a drilling rig. The moving picture simply showed this man leaning over his automobile with his shirt off, in his undershirt, evidently working under the hood of his car; that he then walked around the car, leaned over with apparent extreme difficulty, picking up his walking stick, walked around the other side of the car and then went in the house. So far as the Court was concerned, this moving picture, which it is said was made without plaintiff's consent or knowledge, not only fails to show that plaintiff is not disabled but clearly shows that the plaintiff does not have the free use of his body, and especially when he leaned down to pick up his stick was it apparent to the Court that his body was very rigid. Evidently, at this time he had on his brace.
"Not only the medical examination and testimony of the doctors who were the witnesses for plaintiff but the actual physical appearance of the plaintiff speaks for itself. This Court feels that there is no question whatsoever but that the plaintiff is at this time totally disabled to do any work, especially manual labor.
"There should therefore be judgment in favor of the plaintiff and against defendant for the amount of compensation prayed for during the period of disability, not to exceed 400 weeks, subject to a credit for the compensation heretofore paid, with legal interest from demand to date."
After judgment was signed in accordance with the above opinion, defendants perfected an appeal to this court.
We have carefully studied the record and are convinced that the lower court has correctly determined the case. There is no evidence in the record which would justify any court in finding plaintiff is a malingerer, and the great preponderance of the testimony, both lay and medical, is that plaintiff is totally disabled from performing manual labor. We are convinced, as was the lower court, that defendants *Page 393 
were misled by the report made to them by the detective they put on plaintiff's trail. The witnesses offered by him failed miserably to show that plaintiff was a well man and, on the contrary, to our minds, showed him to be disabled from performing manual labor.
There is no error in the judgment of the lower court and it is affirmed, with costs.